IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Z STREET,                                          :
                                                   :
          Plaintiff,                               :        No. 2:10-cv-04307-CMR
                                                   :
v.                                                 :
                                                   :
DOUGLAS H. SHULMAN,                                :
IN HIS OFFICIAL CAPACITY AS                        :              FILED
COMMISSIONER OF                                    :
INTERNAL REVENUE,                                  :            DEC 1 7 2010
                                                   :
          Defendant.                               :        MICHAEL E. KUNZ, Clerk
                                                   :        By_____ Dep. Clerk



## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Z STREET, a pro-Israel Pennsylvania nonprofit organization, by its

undersigned counsel, and alleges as follows:

### INTRODUCTION

A. The plaintiff in this case, Z STREET, is a nonprofit organization devoted to educating the

   public about Zionism; about the facts relating to the Middle East and to the existence of

   Israel as a Jewish State; and about Israel's right to refuse to negotiate with, make

   concessions to, or appease terrorists. Z STREET is not a grant-making organization ad

   does not fund any organizations either within or outside the United States.

B. Z STREET brings this case because, through its corporate counsel, Z STREET was

   informed explicitly by an IRS Agent on July 19, 2010, that approval of Z STREET's

   application for tax-exempt status has been at least delayed, and may be denied, because

   of a special IRS policy in place regarding organizations in any way connected with Israel,

   and further that the applications of many such Israel-related organizations have been

   assigned to "a special unit in the D.C. office to determine whether the organization's

activities contradict the Administration's public policies." These statements by an IRS official that the IRS maintains special policies (hereinafter the "Israel Special Policy") governing applications for tax-exempt status by organizations which deal with Israel, and which requires particularly intense scrutiny of such applications and an enhanced risk of denial if made by organizations which espouse or support positions inconsistent with the Obama administration's Israel policies, constitute an explicit admission of the crudest form of viewpoint discrimination, and one which is both totally un-American and flatly unconstitutional under the First Amendment.

C. Z STREET brings this case seeking a Declaratory Judgment that the Israel Special Policy violates the First Amendment to the United States Constitution; and for injunctive relief barring application of the Israel Special Policy to Z STREET's application for tax-exempt status or to similar applications by any other organization; and to compel full public disclosure regarding the origin, development, approval, substance and application of the Israel Special Policy.

D. The United States Internal Revenue Service has defended this case by claiming that special review of Z STREET's application for exemption from tax is necessary because Z STREET deals with Israel, and Israel is a country "with" a heightened risk of terrorism. Plaintiff passes without comment the irony that the government claims to be investigating intensively an organization whose charter opposes terrorism, and which is devoted exclusively to speaking in support of a country victimized by terrorism, on the theory that such intensive review is necessary to prevent terrorism, because such an organization might be funding terrorism.  Plaintiff alleges that, as more fully detailed below,

- the government has never sought from Z STREET any information regarding any of the factual issues that the government claims it needs to investigate to prevent the funding of terrorism, and that

- the government has never provided to Z STREET any of the information that the government claims it is obliged to disseminate to applicants for exemption from tax, to guard against the use of tax-exempt funds to promote terror.

E.  Indeed, although the government claims that its policies are necessary to enable the government to obtain or to provide information relating to terrorism, the government has not actually stated that it did seek any such information from Z STREET, or provide any such information to Z STREET.  And in fact the government has not done either.

F.  Although the government has neither sought from Z STREET, nor provided to Z STREET, any information relating to the funding of terrorism, the government **has** sought from Z STREET detailed information regarding the identity and background of Z STREET's leadership.

G.  Because the government's claimed justifications are totally unrelated to any information sought by, or provided by, the government as part of its intensive investigation of Z STREET, it is apparent that the justifications espoused by the government in this case are not the actual drivers of the government's decision to investigate Z STREET intensively.

H.  This is further substantiated by the fact that, as more fully detailed below, the IRS has included in its investigation of another application for exemption from tax, submitted by a purely religious Jewish organization that is not involved with Israel or politics at all, the demand that that organization state "whether [it] supports the existence of the land of

Israel" and by the requirement that the organization "[d]escribe [its] religious belief system toward the land of Israel."

I. Under the First Amendment to the United States Constitution, a government decision about how intensively to investigate an applicant for exemption from tax cannot be made on the basis of the applicant's political or religious views, or on the basis of whether those views are inconsistent with the positions of the administration.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Action by operation of 28 U.S.C. §1331 (federal question) and 28 U.S.C. §2201.

2. Venue lies in this District by operation of 28 U.S.C. 1391(e) inasmuch as a substantial part of the events or omissions giving rise to the claim occurred here, and inasmuch as the Plaintiff resides here.

## FACTS

3. Z STREET filed in the Commonwealth of Pennsylvania for incorporation as a non-profit on November 24, 2009.

4. On December 29, 2009, Z STREET applied to the United States Internal Revenue Service for status as an organization recognized under Section 501(c)(3) of the Internal Revenue Code ("the Code"), which status (also known as "tax-exempt" status) would allow those persons donating money to Z STREET to deduct such donations from their taxable income, thereby diminishing the net after-tax cost of such donations to their donors, and so increasing the amount and number of such donations. Defendant the

Commissioner of Internal Revenue is charged by Section 501(c)(3) of the Code to grant tax-exempt status to those organizations that exclusively engage in charitable and educational activities.

5. Section 501(c)(3) of the Code provides for the exemption from Federal income tax of organizations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual. Section 1.501(c)(3)-1(d)(2) of the Treasury Regulations (the "Regulations") provides that the term "charitable" is used in Section 501(c)(3) of the Code in its generally accepted legal sense.

6. Z STREET was incorporated exclusively for charitable and educational purposes. In addition, its Articles of Incorporation specifically provide that, "No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of its exempt purposes."

7. Z STREET's website, public awareness campaigns, and all other activities are educational. Z STREET's website and other educational materials provide a full and fair exposition of the pertinent facts to permit an individual or the public to form an independent opinion or conclusion.

8. Z STREET has never funded any activities of any other entity and the only expenditures it has ever made are to pay for the costs incurred as part of Z STREET's engaging in or promoting public speech, inside the United States. These include travel expenses for Z STREET personnel to travel within the United States to speak at events; compensation

for speaking or for research and drafting services; for computer and software purchases, web design, and domain name purchase; for administrative personnel and office supplies; and for legal services in connection with its corporate organization and application for exemption from tax. Z STREET has never made any expenditures of any kind not enumerated here, to any person or entity, in any location. Nothing on Z STREET's website has ever provided any reasonable basis for the belief that Z STREET engages in any funding activities other than those enumerated in this paragraph.

9. Z STREET's positions are supported by research, original documents, facts, and opinions from recognized academic and other knowledgeable sources, which sources are provided in its materials and on its website, and therefore, Z STREET's activities are educational and charitable in nature.

10. Z STREET is therefore explicitly organized for charitable and educational purposes within the meaning of Section 501(c)(3) of the Code.

11. Regulation Section 1.501(c)(3)-1(d)(2) provides that the term "charitable" includes "advancement of education," and Section 1.501(c)(3)-1(d)(3)(i) of the Regulations defines "education" as: (a) the instruction or training of the individual for the purpose of improving or developing his capabilities; or (b) the instruction of the public on subjects useful to the individual and beneficial to the community. The second example of Section 1.501(c)(3)-1(d)(3)(i) of the Regulations refers to organizations whose activities consist of presenting public discussion groups, forums, panels, lectures, or other similar programs as being educational.

12. The fact that an organization is engaged in the advocacy of controversial viewpoints or positions, with the intent of molding public opinion or creating public sentiment, does not

preclude such organization from qualifying for tax–exemption under Section 501(c)(3) of the Code, so long as the organization presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. Treas. Reg. 1.501(c)(3)-1(d)(2); Revenue Procedure 86-43, 1986-2 CB 729.

13. In Revenue Procedure 86-43, 1986-2 C.B. 729, the IRS established a methodology test to determine whether an organization's advocacy activities are educational. The IRS is precluded by Revenue Procedure 86-43 from rendering any judgment as to the substance of the organization's advocacy position.  Instead, in evaluating an application for exemption under Section 501(c)(3), the IRS will look to the method used by the organization to develop and present its views. *Id.* The method is not educational if it fails to provide: (a) a factual foundation for the viewpoint being advocated; or (b) a developed presentation of the relevant facts that would materially aid a listener or reader in a learning process. In addition, the presence of any of the following factors in the presentations made by the organization is indicative that the method used by the organization to advocate its viewpoints is not educational:

   a.  The presentation of viewpoints unsupported by facts is a significant portion of the organization's communications;

   b.  The facts that purport to support the viewpoints are distorted;

   c.  The organization's presentations make substantial use of inflammatory and disparaging terms and express conclusions more on the basis of strong emotional feelings than of objective evaluations; or

    d.  The approach used in the organization's presentations is not aimed at developing an understanding by the intended audience or readership because it does not consider their background or training in the subject matter.

Moreover, IRS policy stipulates that there may be exceptional circumstances where an organization's advocacy may be educational even if one or more of the listed factors are present. PLR 199907021. In such case, the IRS will look to all the facts and circumstances to determine whether an organization may be considered educational despite the presence of one or more of such factors.

14. This list of enumerated factors does not include political or religious views or positions.

15. In Private Letter Ruling 199907021, the IRS ruled that an organization which published newsletters to its members, produced a series of daily radio commentaries, and engaged in other educational activities about national and foreign policy issues was a charitable organization. The IRS concluded that the organization's activities were educational because the organization (1) included the opposition's position; (2) supported its position with facts; and (3) cited independent sources that support the facts contained in the articles.

16. In a letter dated May 15, 2010, IRS Agent Diane Gentry, to whom the Z STREET file had been assigned, sent an IRS Letter 2382 requesting additional information to aid her in her review of Z STREET's IRS Form 1023 (the "Application"). Z STREET, by its corporate counsel, submitted a response on June 17, 2010, providing all of the requested information, most of which had already been provided in Z STREET's initial application, including information about each of Z STREET's board members. In fact, detailed personal information about each Z STREET board member had to be supplied to the IRS

several times, a number in excess of the experiences of Z STREET board members for any other board on which they sit.

17. In an effort to learn the status of the application, and the reason for the delay in issuance of the requested 501(c)(3) certification, Z STREET's corporate counsel made follow up calls to IRS Agent Gentry of the IRS on July 7, and 14, 2010, which went unanswered. Counsel left a message in each instance, to which Agent Gentry did not respond.

18. On July 19, 2010, Z STREET's corporate counsel called again, and this time spoke with IRS Agent Gentry who advised Z STREET's counsel that she had two concerns regarding the Application: (1) the advocacy activities in general, and (2) the IRS's special concern about applications from organizations whose activities are related to Israel, and that are organizations whose positions contradict the US Administration's Israeli policy.

19. Furthermore Agent Gentry advised Z Street's counsel that she questioned whether Z STREET's activities were educational as described under Section 501(c)(3) of the Code, but instead might be lobbying, or that Z STREET might be an "action organization," which is the case when the only way to accomplish the purpose of the organization is through legislation.

20. In fact, none of Z STREET's purposes can be accomplished through legislative action, and indeed the government's admission in defense of this case make clear that the IRS has delayed Z STREET's application for reasons having nothing to do with any concern that Z STREET is an action organization.

21. Under governing law, the IRS must look to the method used by the organization to develop and present its views. The method is not educational if it fails to provide: (a) a

factual foundation for the viewpoint being advocated; or (b) a developed presentation of the relevant facts that would materially aid a listener or reader in a learning process.

22. To the extent that this concern is actually animating the IRS's response to Z STREET's application for 501(c)(3) status, it is baseless. Z STREET's application provides eminent, factual, proof that the organization's website, public awareness campaigns, and other activities are educational ones conducted in conjunction with advocacy. The application makes clear and all the evidence supports that Z STREET does and will provide a full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion, and that Z STREET's positions are and will be supported by research, original documents, facts, and opinions from recognized academic and other knowledgeable sources.

23. Further, in addition to its application for 501(c)(3) status, Z STREET also applied for 501(h) status, which allows a tax-exempt organization to engage in lobbying, to the extent any is engaged in, by measuring the amount of money the organization spends on lobbying, and for an organization the size of Z STREET, that amount is 20% of the exempt purpose expenditures. Z STREET has not engaged in any lobbying activities no matter how defined, but had it done so, less than 20% of its total expenditures were spent on lobbying.

24. Agent Gentry also informed Z STREET's counsel that the IRS is carefully scrutinizing organizations that are in any way connected with Israel.

25. Agent Gentry further stated to counsel for Z STREET: "these cases are being sent to a special unit in the D.C. office to determine whether the organization's activities contradict the Administration's public policies."

26. Z STREET, and its President, Lori Lowenthal Marcus, have publicly taken positions on
    issues relating to Israel that are inconsistent with positions taken by the Obama
    administration.

27. The IRS's admissions by Agent Gentry make clear that the IRS maintains an Israel
    Special Policy governing the processing of applications for tax exemption by
    organizations which are believed to be operated by persons holding political views
    inconsistent with those espoused by the Obama administration, and that the Israel Special
    Policy mandates that such applications be scrutinized differently and at greater length,
    and therefore that they take longer to process than those made by organizations without
    that characteristic, or even that the tax-exempt application might be denied altogether on
    that basis.

28. Z STREET has been and continues to be injured in its business and property by the Israel
    Special Policy inasmuch as its application for tax-exempt status has been affected by the
    application of a clearly unconstitutional policy which has held up the granting of its
    501(c)(3) status, as admitted by the IRS agent in charge of reviewing and determining Z
    STREET's application. This delay has impaired and continues to impair Z STREET's
    ability to raise funds and has thereby restricted the scope of its operation and its ability to
    speak and to educate the public regarding the issues that are the focus and purpose of Z
    STREET.

29. As of the date of the filing of this First Amended Complaint, Z STREET's application for
    tax-exempt status has not been approved.

30. Organizations engaged in the same degree of political advocacy regarding issues in Israel
    and other countries in the Middle East which have a heightened risk of terrorism, but

which take positions more closely aligned with the Obama administration's views and policies regarding Israel, have been granted tax-exempt status and, on information and belief, such applications have been granted more quickly than Z STREET's application and without the same delays or intensity of review.

31. The descriptions advanced by the government, since this case was filed, of the policy affecting Z STREET's application for exemption from tax, are not accurate. The government's claim to be focused on the nature of funding decisions made by an applicant for exemption; the need to ensure that applicants are aware of applicable regulation of funding practices; and the need to ensure that applicants have in place certain controls governing funding practices, are belied by the government's total failure, through the date of the filing of this First Amended Complaint, to seek any information from, or to provide any information to, Z STREET regarding any of these issues.

32. The government's claimed justifications are also inconsistent with the reasons provided by Agent Gentry, as described in ¶¶18, and 24-25 above, for the delay in resolution of Z STREET's application for exemption from tax.

33. Specifically, neither Z STREET nor any of its agents, counsel or representatives, has ever received any communication from the Internal Revenue Service ("IRS") or any other agency of the United States, relating to any requirements imposed by the Office of Foreign Asset Control ("OFAC"), including but not limited to those regarding providing funds to foreign countries.

34. Neither Z STREET nor any of its agents, counsel or representatives, has ever received any communication from the IRS, or any other agency of the United States, relating to whether Z STREET has in place procedures to ensure that resources are not diverted to

individuals or organization on any list maintained by OFAC, nor regarding the substance of any such procedures that Z STREET should institute.

35. Neither Z STREET nor any of its agents, counsel or representatives, has ever received any communication from the IRS, or any other agency of the United States, regarding whether Z STREET has in place any procedures to ensure that any grants Z STREET gives are used for any particular purpose, nor regarding the substance of any such procedures that Z STREET should institute.

36. Neither Z STREET nor any of its agents, counsel or representatives, has ever received any inquiry from the IRS, or any other agency of the United States, regarding whether Z STREET has ever issued any grant to any entity; whether Z STREET has ever transferred funds to any person or entity outside the United States; or whether Z STREET has ever facilitated the transfer of funds to any person or entity outside the United States. Indeed, neither Z STREET nor any of its agents, counsel or representatives, has ever received any inquiry from the IRS, or any other agency of the United States, regarding the identity of the persons or entities to whom Z STREET has paid money for any purpose.

37. The government's description of the policy delaying Z STREET's application for exemption from tax is also inconsistent with the other manifestation of that policy of which plaintiff is aware. Specifically, Z STREET learned after the filing of this case that, in connection with its processing of an application for a charitable exemption from tax submitted by another organization, the IRS posed the following questions to that applicant:

   a. Does your organization support the existence of the land of Israel?

   b. Describe your organization's religious belief system toward the land of Israel.

38. The precise identity of the applicant described in ¶37 above is unknown to Z STREET. Z
STREET, through its litigation counsel, learned about the questions set forth herein from
internet research.  Litigation counsel subsequently spoke with a person who represented
that applicant in connection with its application for exemption from tax.  That
representative provided to Z STREET all but the first page of a letter, sent to that
applicant by the IRS, acting through Exempt Organizations Specialist Tracy Dornette,
which is attached to this First Amended Complaint as Exhibit A.  This representative
refused to identify the applicant, and agreed to provide the excerpted document attached
as Exhibit A only on the condition that Z STREET would maintain in confidence the
identity of the representative.  Z STREET agreed to maintain that confidence to the
extent that it is legally permitted to do so.

39. Although the representative refused to identify the applicant, the representative did
inform Z STREET that the applicant is a purely religious Jewish organization that
focuses exclusively on encouraging American Jews to learn about the Jewish religion and
to follow its traditions and laws.  The representative informed Z STREET that the
applicant takes no public positions related to the State of Israel or Middle East politics.

40. Because Z STREET has never engaged in any funding of any other person or entity other
than those engaged in speech inside the United States; has never been asked by the IRS
about the nature of any Z STREET funding decisions; has never been asked by the IRS
about the nature of any financial controls maintained by Z STREET; and has never been
informed about any government regulations or policies applicable to Z STREET, and
because Z STREET's website has never provided a reasonable basis for the belief that Z
STREET engages in any funding of any person, entity or activity outside of the United

States, it is not possible that the IRS has chosen to investigate Z STREET's application for exemption from tax with special intensity, or to refer Z STREET's application to the TAG Working Group, because of any concern about such funding or funding issues.

41. Instead, the only activity Z STREET has engaged in is speech, or the promotion of speech, within the United States about Israel and Zionism, and these are the only activities Z STREET's application, website, and public statements could possibly suggest Z STREET has engaged in.  Given these facts, Agent Gentry's admissions, and the statements made by the government in its defense of this case, Plaintiff alleges that the substance of the policy governing the IRS's processing of Z STREET's application from tax relates to the content of Z STREET's speech regarding Israel and Zionism and not to any of the concerns espoused by the government in the government's defense of this case.  This is further substantiated by the fact that the questions discussed in ¶36 above focus exclusively on the viewpoint of the applicant regarding Israel.

### COUNT I

Pursuant to the Declaratory Judgment Act,
28 U.S.C. §2201, and the First Amendment
To the United States Constitution

42. Plaintiff repeats and re-alleges paragraphs 1 through 41 as if fully set forth herein.

43. Limitation of the issuance of tax-exempt status to a nonprofit educational organization on the basis of the substantive views held by the persons who operate the organization constitutes a restriction on the freedom of speech of such persons.

44. The existence and application of the Israel Special Policy identified above constitutes blatant viewpoint discrimination in violation of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff seeks a Declaration that Defendant's substance and application of the Israel Special Policy to any application for tax-exempt status constitutes discrimination among viewpoints and a violation of the Plaintiff's right to freedom of speech as guaranteed by the First Amendment to the United States Constitution.

Plaintiff further seeks injunctive relief:

A. Barring application of the Special Policy to its pending application for tax-exempt status pursuant to §501(c)(3) of the Code;

B. Requiring that Defendant adjudicate Plaintiff's application for tax-exempt status expeditiously and fairly and without any consideration of whether the positions espoused by the Plaintiff or its officers are or are not consistent or inconsistent with the policy positions taken by the Obama administration;

C. Mandating complete disclosure to the public regarding the origin, development, approval, substance and application of the Special Policy.

D. Awarding to Plaintiff of its attorney's fees and costs pursuant to 28 U.S.C. §2412; and

E. Such other and further relief as the Court may deem proper.


/s/
Jerome M. Marcus
Attorney I.D. 50708
MARCUS & AUERBACH, LLC
101 Greenwood Avenue, Suite 310
Jenkintown, PA 19046
VOICE:        215 885 2250
FAX:          888 875 0469
Email: jmarcus@marcusauerbach.com

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on December 17, 2010, I caused the foregoing Plaintiff's
First Amended Complaint, and related exhibits, to be electronically filed and served via
the CM/ECF system.

Cathy L. Dodies

# Exhibit A

Page 2

Sincerely yours,

Tracy Dornette
Exempt Organizations Specialist

Enclosure:   Information Request

Additional Information Requested:

1.  Please read the Penalties of Perjury statement on page 1 above. Then, please sign and date below, indicating you agree to the Declaration.

Name                                                Date

2.  Your most recent response to our letter dated February 9, 2010 was not signed by a board member under Penalties of Perjury. Please have an officer sign the following Penalties of Perjury statement regarding your response:

    *Under penalties of perjury, I declare that I have examined the information in response to the IRS letter dated February 9, 2010, including accompanying documents, and, to the best of my knowledge and belief, the information contains all the relevant facts relating to the request for the information, and such facts are true, correct, and complete.*

Name                                                Date

3.  Does your organization support the existence of the land of Israel? Describe your organization's religious belief system toward the land of Israel.

4.  Please refer to the enclosed newsletter

5.  Your website has an online Judaica store that sells merchandise associated with the Jewish religion and culture. Please refer to the enclosed webpage printout for example, and provide the following information regarding your online store:

    a.  How will your organization obtain this merchandise? Will your organization manufacture the merchandise, purchase it from another organization, or receive it by donation?

    b.  If your organization is purchasing the merchandise, is your organization or its members related to the supplier in any way? Please explain.

Page 4

c.   How were the sales prices of the merchandise determined?

d.   Distinguish your online store for a for-profit operation.

e.   Does your online store sell any books or other media in which any of your board members hold copyrights to? If so, please indicate which media.

f.   Is the online store conducted for the convenience of the members of your organization?

g.   How important is the online store related to the nature and extent of the exempt function you intend to serve?

h.   Is the online store maintained and operated by volunteer labor?


PLEASE DIRECT ALL CORRESPONDENCE REGARDING YOUR CASE TO:

US Mail:                          Street Address:

Internal Revenue Service          Internal Revenue Service
Exempt Organizations              Exempt Organizations
P. O. Box 2508                    550 Main St, Federal Bldg.
Cincinnati, OH 45201              Cincinnati, OH 45202
ATTN: Tracy Dornette              ATTN: Tracy Dornette
    Room 4504                         Room 4504
    Group 7830                        Group 7830

Letter 1312 (Rev. 12/2007)